[Cite as *State v. Frazier*, 2011-Ohio-1206.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Willilam B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Julie A. Edwards, J. |
| -vs- | Case No. 2010CA00172 |
| DARRELL FRAZIER | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Stark County Court of
Common Pleas, Case No. 2010CR0318

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    March 14, 2011

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JOHN D. FERRERO,                  MATTHEW PETIT
PROSECUTING ATTORNEY,            116 Cleveland Ave. North
STARK COUNTY, OHIO               Suite 808, Courtyard Centre
                                 Canton, Ohio 44702
BY: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio 44702-1413

*Hoffman, P.J.*

{¶1} Defendant-appellant Darrell Frazier appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of felonious assault, following a jury trial. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE CASE AND FACTS

{¶2} On April 2, 2010, the Stark County Grand Jury indicted Appellant on one count of felonious assault, in violation of R.C. 2903.11(A)(1) and/or (A)(2). Appellant appeared before the trial court for arraignment on April 9, 2010, and entered a plea of not guilty to the Indictment. The matter proceeded to jury on June 7, 2010.

{¶3} Ronald Gillespie, Jr. testified he and his cousins, Percy Goodman and Antonio Goodman, were at Sparky's, a bar in Canton, on December 27, 2009, celebrating his upcoming twenty-first birthday. Another cousin, Evelyn Robinson, subsequently joined the three men. The bar closed before 2:00am due to an unrelated fight between other bar patrons. Appellant and his cousins exited the bar and walked toward the adjoining parking lot. Appellant, James Rianelli, Cortez Everett, Cedric Gaines, and Nicholas Harvey were also patrons at Sparky's that evening, and exited at approximately the same time as Gillespie and his cousin.

{¶4} While in the parking lot, Percy Goodman and Rianelli exchanged some words which led to a physical altercation. Everett moved toward Percy Goodman and joined the fray when it appeared Percy Goodman had the better of Rianelli. Antonio Goodman, upon observing Everett advancing toward his brother, joined the fight. Gillespie stayed with Robinson, who was pregnant, closer to the building. Everett eventually approached Gillespie, who prepared to defend himself. A fight ensued

between Everett and Gillespie during which Gillespie observed Appellant moving toward him and then eventually standing behind him. Gillespie turned around and hit Appellant "back off of" him. Gillespie turned his attention back toward Everett, taking his focus off of Appellant. Someone shouted, "Watch out, he got something!" as Gillespie turned to his right he was struck and fell to the ground, unconscious. Percy Goodman, who was still fighting with Rianelli, heard girls screaming, "He hit him with something! He hit him with something!" The crowd dispersed as paramedics and police arrived at the scene.

{¶5} Evelyn Robinson testified she was standing with Gillespie when the fight between Percy Goodman and Rianelli ensued. Robinson recalled Everett approaching Gillespie after he had been prevented from interfering with the Percy Goodman-Rianelli fight. Robinson described Everett as approaching in a threatening manner. Because Gillespie was getting the better of his friend, Appellant advanced toward Gillespie to assist Everett. Gillespie turned toward Appellant, hit him and knocked him back. Robinson then observed Appellant pull a set of brass knuckles out of his pocket, and strike Gillespie in the back of the head. Gillespie, who was rendered unconscious, fell to the ground. Appellant and Everett attempted to stomp on Gillespie, but Robinson stood over him. Appellant and Everett left the scene before the police arrived.

{¶6} Gillespie was transported to the hospital. He sustained a broken facial bone and a split tongue as well as a concussion. Doctors placed Gillespie into a medically induced coma. The damage to his eye caused by Appellant's punch required plastic surgery. Gillespie did not regain consciousness from the time Appellant hit him until two weeks later when doctors awoke him from the medically induced coma. Gillespie was placed on a respirator while in the coma. The respirator caused an

infection which was so severe doctors had to perform a tracheotomy on him. Gillespie was discharged from the hospital on January 16, 2010. However, he was still receiving medical care for his injuries at the time of the trial.

{¶7} Appellant testified on his own behalf. Because he believed Rianelli was getting the better of Percy Goodman, Appellant stood back to make sure no one came to Goodman's defense. Appellant believed Gillespie was going to join the fray to help his cousin so Appellant struck Gillespie in the jaw. Appellant denied using brass knuckles.

{¶8} After hearing all the evidence and deliberating, the jury found Appellant guilty as charged. The trial court sentenced Appellant to a term of imprisonment to a term of six years.

{¶9} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:

{¶10} "I. THE TRIAL COURT'S FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶11} "II. THE APPELLANT WAS DEPRIVED OF DUE PROCESS OF BY THE MISCONDUCT OF THE PROSECUTOR.

{¶12} "III. THE APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE."

I

{¶13} In his first assignment of error, Appellant challenges his conviction as against the manifest weight and based upon insufficient evidence.

{¶14} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N .E.2d 541 superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, 684 N .E.2d 668, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

{¶15} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by constitutional amendment on other grounds in *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668.

{¶16} Appellant was convicted of one count of felonious assault, in violation of R.C. 2903.11(A)(1) and/or (A)(2), which provides:

{¶17} (A) No person shall knowingly do either of the following:

{¶18} (1) Cause serious physical harm to another or to another's unborn;

{¶19} (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶20} Appellant asserts the State failed to prove he knowingly caused serious harm to Gillespie or caused physical harm to Gillespie using brass knuckles.   Appellant further contends the evidence was insufficient to support his conviction as he was acting in defense of another.

{¶21} The culpable mental state of "knowingly" is defined as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶22} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff* (2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel* (May 1, 1998), Montgomery App. No. 16221, (citing *State v. Elliott* (1995), 104 Ohio App.3d 812, 663 N.E.2d 412).

{¶23} R.C. 2901.01(A)(5) defines "serious physical harm" as "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity." When a victim's injuries are serious enough to cause him to seek medical treatment, the jury may infer the victim suffered serious physical injury. State v. McCoy (Sept. 7, 2000), Franklin App. No. 99AP-1048, citing State v. Winston (1991), 71 Ohio App.3d 154, 593 N.E.2d 308;

{¶24} The evidence reveals Gillespie and Robinson remained away from the fray because of Robinson's pregnancy. Everett approached Gillespie to fight and Gillespie was getting the better of Everett, and Appellant proceeded toward Gillespie to assist his friend. Gillespie punched Appellant off his back. Thereafter, Appellant returned with a pair of brass knuckles and knocked out Gillespie with a single punch. Although Appellant insists he did not have brass knuckles, the testimony is viewed in a light most favorable to the prosecution, resolving any disputes in favor the State. We find the State presented sufficient evidence for the jury to find the essential element of knowingly as Appellant, after being pushed out of the fight between Everett and Gillespie, returned with a pair of brass knuckles and knowingly struck Gillespie, causing serious physical harm.

{¶25} In support of his position the verdict was against the manifest weight of the evidence, Appellant notes Evelyn Robinson was the only witness who testified to observing him strike Gillespie with brass knuckles. Both Rianelli and Everett testified they did not see Appellant with brass knuckles. Appellant further adds the police did not recover brass knuckles and such were not introduced into evidence. Appellant

concludes, as a result, the State failed to prove he caused physical harm to Gillespie by means of a deadly weapon.

**{¶26}** As we have often stated, the jury is free to accept or reject any or all of the testimonies of the witnesses. The jury obviously found Evelyn Robinson more credible than Appellant and his witnesses.

**{¶27}** Based upon the foregoing and the entire record in this matter, we find Appellant's conviction is neither against the manifest weight of the evidence or based upon insufficient evidence.

**{¶28}** Appellant's first assignment of error is overruled.

II

**{¶29}** In his second assignment of error, Appellant argues he was deprived of due process as the result of prosecutorial misconduct.

**{¶30}** The test regarding prosecutorial misconduct in closing arguments is "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883; *State v. Hessler* (2000), 90 Ohio St.3d 108, 125, 734 N.E.2d 1237.

**{¶31}** Specifically, Appellant takes issue with the prosecutor's statement during closing arguments Appellant "punched [Gillespie] in the head and sent him to the hospital for weeks. Put him in a coma for weeks." Appellant submits such statement was prejudicial because Gillespie was placed into a medically induced coma. Appellant also takes issue with the prosecutor's statement the F.B.I. Fugitive Task Force was looking for him as the comment inferred Appellant was the subject of an F.B.I. investigation separate and apart from the instant action.

**{¶32}** Upon review of the record, we find the prosecutor's statement regarding Appellant's putting Gillespie into a coma for two weeks, while arguably a technical misstatement, did not result in prejudice sufficient to rise to the level of misconduct when taken in context with the entire closing argument.　Further, the comment was factual as Gillespie was placed into a medically induced coma due to the injuries inflicted upon him by Appellant.

**{¶33}** With respect to the statement regarding the F.B.I. involvement in locating Appellant after the incident, we find the prosecutor's comments were not improper and Appellant was not prejudiced thereby.

**{¶34}** Appellant's second assignment of error is overruled.

III

**{¶35}** In his final assignment of error, Appellant raises a claim of ineffective assistance of trial counsel.

**{¶36}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶37}** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley,* 42 Ohio St.3d at 142, 538 N.E.2d 373. Because of the difficulties

inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id.*

**{¶38}** In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable. *Strickland* 466 U.S. at 687, 694, 104 S.Ct. at 2064; 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.; Bradley,* supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* supra; *Bradley,* supra.

**{¶39}** The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697. Accordingly, we will direct our attention to the second prong of the *Strickland* test.

**{¶40}** Appellant asserts trial counsel was ineffective for failing to require the State to select one theory of its case as the Indictment charged Appellant with two different subsections of the felonious assault statute. We find Appellant is unable to satisfy either the first or the second prong of *Strickland* test. The evidence presented at trial was sufficient to convict Appellant under each subsection and we know of nothing that prevents the State from presenting alternative theories to support the indictment. We find the alternative theories presented herein are not inconsistent .

{¶41} Based upon the foregoing, Appellant's third assignment of error is overruled.

By: Hoffman, P.J.

Wise, J.  and

Edwards, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ John W. Wise_____
HON. JOHN W. WISE


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                                  :
                                               :
    Plaintiff-Appellee                     :
                                               :
-vs-                                           :          JUDGMENT ENTRY
                                               :
DARRELL FRAZIER                                :
                                               :
    Defendant-Appellant                    :          Case No. 2010CA00172


For the reasons stated in our accompanying Opinion, the judgment of the Stark

County Court of Common Pleas is affirmed.  Costs to Appellant.


s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ John W. Wise_____
HON. JOHN W. WISE


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS